UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

NATIONAL HOCKEY LEAGUE, et al.,               :
                                              :    12-CIV-9133 (PAE)
                        Plaintiffs,           :
                                              :
              v.                              :
                                              :
NATIONAL HOCKEY LEAGUE PLAYERS'               :
ASSOCIATION, et al.                           :
                                              :    **Filed Electronically**
                        Defendants.           :
-------------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

James W. Quinn
Bruce S. Meyer
John R. Gerba
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel:    (212) 310-8000
Fax:    (212) 310-8007

And

Steven A. Fehr
204 W. Linwood Blvd.
Kansas City, MO 64111
Tel:    (816) 561-3755
Fax:    (816) 561-9355

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................6

ARGUMENT ............................................................................................................7

I.    The NHL's Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction ..................................................................................................7

    A.    The Complaint's Allegations of a Hypothetical Disclaimer and Lawsuit Are Insufficient to Establish an "Actual Controversy" ...........................................8

    B.    Alleged "Threats" Made During Collective Bargaining Are Insufficient to Establish an "Actual Controversy" as a Matter of Law .......................................10

    C.    The NHLPA Has No Standing to Bring a Coercive Antitrust Suit and Thus The Court Does Not Have Subject Matter Jurisdiction Over the NHLPA ............13

II.    Even if Subject Matter Jurisdiction Exists, the Court Should Decline to Exercise its Discretion to Hear this Case ..................................................................14

CONCLUSION .........................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
  459 U.S. 519 (1983).................................................................................................14

Atlanta Gas Light Co., v. Aetna Cas. And Sur. Co.,
  68 F.3d 409 (11th Cir. 1995) .....................................................................................8

Atlas Air, Inc. v. Air Line Pilots Ass'n,
  232 F.3d 218 (D.C. Cir. 2000) ..................................................................................11

Brady v. NFL,
  779 F. Supp. 2d 992 (D. Minn. 2011), rev'd on other grounds 646 F.3d 661 (8th Cir.
  2011) .....................................................................................................................3, 13

Brown v. Pro Football, Inc.,
  518 U.S. 231 (1996)...................................................................................................2

Bowman v. NFL,
  402 F. Supp. 754 (D. Minn. 1975).............................................................................2

Cargill, Inc. v. Monfort of Colorado, Inc.,
  479 U.S. 104 (1986)..................................................................................................14

CGI Solutions, LLC v. Sailtime Licensing Group, LLC,
  No. 05 Civ. 4120 (DAB), 2005 U.S. Dist. LEXIS 28878 (S.D.N.Y. Nov. 17, 2005) .............15

E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,
  241 F.3d 154 (2d Cir. 2001).......................................................................................8

Fed. Express Corp. v. Air Line Pilots Ass'n,
  67 F.3d 961 (D.C. Cir. 1995) ....................................................................................11

Great Am. Ins. Co. v. A.G. Ship Maint. Corp.,
  368 F. Supp. 2d 364 (S.D.N.Y. 2005).......................................................................15

Great Am. Ins. Co. v. Houston Gen. Ins. Co.,
  735 F. Supp. 581 (S.D.N.Y. 1990)............................................................................14

Int'l Sec. Exch., LLC v. Dow Jones & Co.,
  No. 07-3324-cv, 2009 U.S. App. LEXIS 230 (2d Cir. Jan. 8, 2009)......................14

Jackson v. NFL,
  802 F. Supp. 226 (D. Minn. 1992).............................................................................2

*Kapp* v. *NFL*,
   390 F. Supp 73 (N.D. Cal. 1974) ..................................................................2

*Katzman* v. *Helen of Troy Texas Corp.*,
   No. 12 Civ. 4220 (PAE), 2012 WL 3831745 (S.D.N.Y. August 28, 2012) ...........10

*Lewis* v. *NFL*,
   813 f. Supp. 1 (D.D.C 1992) .......................................................................15

*Linesman* v. *World Hockey Ass'n*,
   439 f. Supp. 315 (D. Conn. 1977) ................................................................2

*Mackey* v. *NFL*,
   543 F.2d 606 (8th Cir. 1976) ......................................................................2

*Maryland Cas. Co.*, v. *Pacific Coal & Oil Co.*,
   312 U.S. 270 (1941) ...................................................................................9

*McNeil* v. *NFL*,
   764 F. Supp. 1351 (D. Minn. 1991) ........................................................2, 3, 13

*MedImmune, Inc.* v. *Genetech, Inc.*,
   549 U.S. 118 (2007) .......................................................................4, 9, 10, 14

*N. Am. Airlines Inc.* v. *Int'l Bhd. of Teamsters*,
   No. 04 Civ. 9949(KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ............8, 11

*Nat'l Union Fire Ins. Co.* v. *Int'l Wire Group, Inc.*,
   No. 02 Civ. 10338 (SAS), 2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003)..............14

*NHL* v. *NHLPA*,
   789 F. Supp. 288 (D. Minn. 1992) ..................................................... passim

*Pittsburgh Steelers, Inc.*,
   No. 6-CA-2314, 1991 WL 144468 (N.L.R.B.G.C. June 26, 1991) ........................3

*Radovich* v. *NFL*,
   352 U.S. 445 (1957) ...................................................................................2

*Robertson* v. *NBA*,
   556 F.2d 682 (2d Cir. 1977) .........................................................................2

*Textron Lycoming Reciprocating Engine Div., Avco Corp.* v. *United Auto., Aerospace
   and Agric Implement Workers of Am.*,
   523 U.S. 653 (1998) ................................................................................7, 8

*Tunne* v. *Duane Reade, Inc.*,
   No. 09 Civ. 10187 (BSJ), 2011 U.S. Dist. LEXIS 27305 (S.D.N.Y. March 12, 2011)............8

iii

<u>United States</u> v. <u>Santana</u>,
   761 F. Supp. 2d 131 (S.D.N.Y. 2011)....................................................................................10

<u>Vantage Trailers, Inc.</u> v. <u>Beall Corp.</u>,
   567 F.3d 745 ( 5th Cir. 2009) ...............................................................................................8


**S**TATUTES

28 U.S.C. § 2201.......................................................................................................................7

29 U.S.C. § 157.........................................................................................................................3


**O**THER **A**UTHORITIES

Rule 12(b)(1) of the Federal Rules of Civil Procedure.................................................................8

Katie Strang, <u>Sources:  PA doesn't file disclaimer</u>, ESPN.com, Jan. 3, 2012,
   http://espn.go.com/nhl/story/_/id/8806808/nhlpa-lets-deadline-pass-filing-disclaimer-
   interest..........................................................................................................................12

US_ACTIVE:\44161249\9\64938.0014

Defendants the National Hockey League Players' Association ("NHLPA") and certain of the individually named defendants[1] (collectively with the NHLPA, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiffs the National Hockey League and its member teams (collectively, the "NHL" or "Plaintiffs").

## PRELIMINARY STATEMENT

The NHL brought this action in an attempt to get the Court to opine on certain legal principles in the abstract, and, in the process, secure a forum they apparently view as favorable for strategic reasons. They ask the Court to simply assume the outcome of events that had not yet taken place at the time the Complaint was filed, and then decree what the law would be on the basis of those assumptions. The NHL's Complaint asks for declarations that *if* the NHLPA, currently the recognized union for NHL hockey players, disclaims such status and some players subsequently file a lawsuit against the NHL's current "lockout" of players, the "lockout" would remain immune from antitrust liability under the non-statutory labor exemption to the antitrust laws for some unspecified period of time. The Complaint also asks for a declaration that the NHL's "lockout" – in essence a group boycott – could under no scenario result in antitrust damages to the very players that are being boycotted. The Complaint also asks for a declaration contingent on the Court rejecting their position that the labor exemption remains in effect and shields their activities even after disclaimer. In that scenario, the Complaint seeks to have the Court declare that the "lockout," if not exempt from antitrust scrutiny, is nonetheless a

---

[1] Undersigned counsel currently does not represent, and has not accepted service of process for, Alexander Auld, Martin Biron, Michael Del Zotto, Brandon Dubinsky, Mark Eaton, Dominic Moore, Brendan Morrison, Cristobal Nieves, or Shane Prince. Accordingly, this motion is not made on behalf of those defendants at this time.

reasonable restraint of trade and lawful under antitrust law and that all existing individually

negotiated player contracts would become void and unenforceable.

"It is certainly no secret . . . that antitrust issues exist in professional sports." NHL v.

NHLPA, 789 F. Supp. 288, 295 (D. Minn. 1992).[2] Here, the NHL has collectively agreed to

implement a group boycott of the players, called a "lockout," that creates clear antitrust liability.

The NHL claims it need not worry about this liability because its actions are exempt from

antitrust scrutiny under the non-statutory labor exemption.  In fact, the NHL's Complaint seeks

to have this Court broaden the scope of that exemption beyond any previous decision by

claiming that the exemption continues in effect even after employees disclaim union

representation in collective bargaining.  In Brown v. Pro Football, Inc., however, the Supreme

Court expressly identified decertification as an example of a point at which the labor exemption

ends:

> Our holding is not intended to insulate from antitrust review every
> joint imposition of terms by employers, for an agreement among
> employers could be sufficiently distant in time and in
> circumstances from the collective-bargaining process that a rule
> permitting antitrust intervention would not significantly interfere
> with that process.  *See, e.g.*, 50 F.3d, at 1057 (*suggesting that
> exemption lasts until collapse of the collective-bargaining
> relationship, as evidenced by decertification of the union*) . . . .

518 U.S. 231, 250 (1996) (emphasis added).

Moreover, the purpose of the non-statutory labor exemption is to enable the collective

bargaining process.  Thus, "[i]n the absence of continued union representation, the . . . rationale

---

[2] See also, e.g., Radovich v. NFL, 352 U.S. 445 (1957); Robertson v. NBA, 556 F.2d 682 (2d
Cir. 1977); Mackey v. NFL, 543 F.2d 606 (8th Cir. 1976); Jackson v. NFL, 802 F. Supp. 226 (D.
Minn. 1992); Powell v. NFL & McNeil v. NFL, 764 F. Supp. 1351 (D. Minn. 1991); Linseman
v. World Hockey Ass'n, 439 F. Supp. 1315 (D. Conn. 1977); Bowman v. NFL, 402 F. Supp. 754
(D. Minn. 1975);  Kapp v. NFL, 390 F. Supp. 73 (N.D. Cal. 1974).

US_ACTIVE:\44161249\9\64938.0014

for the exemption no longer applies because the parties may not invoke any remedy under the labor laws." Powell v. NFL & McNeil v. NFL, 764 F. Supp. 1351, 1359 (D. Minn. 1991). Indeed, the NHL's argument that a disclaimer of bargaining status by a union would not be effective to end the labor exemption to the antitrust laws has been rejected by every court to consider the issue. See Brady v. NFL, 779 F. Supp. 2d 992, 1040 (D. Minn. 2011), rev'd on other grounds 646 F.3d 661 (8th Cir. 2011); Powell & McNeil, 764 F. Supp. at 1358.

The NHL's Complaint attempts to avoid the import of these decisions by asking that this Court declare that the exemption would survive disclaimer because any disclaimer by the players would be ineffective as a matter of labor law. See Compl. ¶ 10. In essence, the NHL's position is that the Court should force the players to remain a union so that the NHL can continue to claim that the non-statutory labor exemption protects activities that would otherwise be flagrant violations of the antitrust laws. This is simply repugnant to Section 7 of the National Labor Relations Act, which, in no uncertain terms, provides that

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and *shall also have the right to refrain from any or all such activities* . . . .

29 U.S.C. § 157 (emphasis added); see also Powell, 764 F. Supp. at 1357-58 ("employees have an unconditional right 'to refrain' from self-organization and collective bargaining which is guaranteed by Section 7 of the National Labor Relations Act."); Brady, 779 F. Supp. 2d at 1008 (same); Pittsburgh Steelers, Inc., No. 6-CA-23143, 1991 WL 144468, at *4 (N.L.R.B.G.C. June 26, 1991) (finding that the NFLPA "effectively disclaimed its representational rights and ha[d] converted itself from a Section 2(5) labor organization to a trade association"). The players have

the absolute right to decide whether they are better off with or without a union representing them in collective bargaining.

However, the Court need not, and respectfully should not, reach these issues because the Supreme Court has made clear that the Declaratory Judgment Act is not a vehicle by which litigants can obtain "an opinion advising what the law would be upon a *hypothetical state of facts*." MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007) (emphasis added).  The Court must look at subject matter jurisdiction as of the date of the NHL's Complaint.  The NHL has alleged that the players have *commenced* a vote to determine if they wish to provide the NHLPA with authority to disclaim.  The complaint is devoid of any allegation that a decision has been made to exercise such authority if it is even granted or any allegation identifying any specific players that intend to file an antitrust lawsuit.  Moreover, the Complaint alleges that the NHL and the NHLPA have had a "continuous" collective bargaining relationship for more than 40 years.  This spanned the duration of two prior "lockouts" during which the NHL never disclaimed and individual players did not file antitrust suits.  Thus, the NHL has failed to meet its burden of establishing an "actual controversy" of "sufficient immediacy and reality" to establish subject matter jurisdiction as of the date of its Complaint.  Id.  This warrants dismissal.

Moreover, even if the NHL had established technical subject matter jurisdiction, this Court should nonetheless exercise its broad discretion to decline to hear this case.  While federal courts may hear declaratory judgment actions where an "actual controversy" confers subject matter jurisdiction, they are not required to do so.  Here, several factors all strongly militate in favor of exercising this discretion to dismiss the Complaint.  The NHL clearly filed this action in an effort to control the forum of what it alleges is an imminent antitrust suit brought by players, which courts in the Second Circuit have routinely found to be an improper use of a declaratory

4

judgment action.  See infra pp. 14-16.  If the NHL's allegations are correct and a disclaimer and

lawsuit are on the immediate horizon, the NHL will shortly have the opportunity to litigate all of

the purported issues raised in the Complaint in that proceeding.  Finally, despite purporting to

bring this action to stop the players from using the federal courts to alter the balance in the

collective bargaining process, that is precisely what the NHL is attempting to do – only in the

forum of its choosing.

This is not the first time that the NHL has improperly attempted to enlist the declaratory

judgment mechanism to support its collective bargaining efforts where no basis for subject

matter jurisdiction exists.  In the early 1990s, the NHL brought a declaratory judgment action

against the NHLPA and certain individually named hockey players as representatives of a class

of similarly situated hockey players.  See NHL v. NHLPA, 789 F. Supp. 288, 289 (D. Minn.

1992).  The CBA between the parties had expired and the NHL was seeking a declaration that its

imposition of anti-competitive free agency restrictions was immune from antitrust law.  See id.

Much like they do here, the NHL was asking the court to "declare" that their actions were

"protected from antitrust challenge under the non-statutory labor exemption[.]"  Id. at 291-92.

The NHL asserted that there was subject matter jurisdiction because that the NHLPA threatened

that the NHL's continued imposition of the restraints at issue would implicate the antitrust laws

and that the involvement of James Quinn as counsel for the NHLPA was "a clear and present

antitrust danger."  Id. at 295.  The NHL alleges these same purported facts in its Complaint here.

See Compl. ¶¶ 1, 15, 45-51, 55, 56.

The court rejected these allegations as a basis to establish an actual controversy between

the NHL and the individually named players and putative class members:  "The facts asserted by

plaintiffs as a predicate for this action are nothing more than typical collective bargaining

5

posturing.  It is certainly no secret to these parties, to this Court, or to the average eight-year-old

sports fan that antitrust issues exist in professional sports." NHL, 789 F. Supp. at 295.  The court

also found that the "NHLPA lack[ed] standing to bring a coercive antitrust action and, therefore,

this Court lacks subject matter jurisdiction to entertain a declaratory judgment action against the

NHLPA." Id. at 293.  The result should be no different here.

## BACKGROUND[3]

The NHL and the NHLPA have, for more than 40 years, been engaged in a collective

bargaining relationship.  Compl. ¶¶ 3, 32.  During that time, the NHL has twice "locked out" its

players.  Id. at ¶ 34.  In 1994-1995, the NHL imposed a "lockout" that started at the beginning of

the regular season and lasted 102 days.  Id.  In 2004-2005, the NHL again "locked out" the

players, this time cancelling an entire season.  Id.  Despite having two "lockouts" within a ten-

year period, the NHLPA never disclaimed its role as the collective bargaining representative of

the NHL players.  See id. at. ¶ 3 (describing a "continuous" 40 year collective bargaining

relationship between the NHL and NHLPA).  As the Complaint acknowledges, that historical

practice between the NHL and NHLPA "has been to negotiate and determine terms and

conditions of employment exclusively through the traditional collective bargaining process[.]"

Id. at ¶ 33.

The most recent collective bargaining agreement ("CBA") between the NHL and the

NHLPA expired on September 15, 2012.  Id. at ¶ 39.  Prior to its expiration, in June 2012, the

NHL and the NHLPA began negotiations for a successor CBA.  Id.  When those discussions

failed to produce an agreement by expiration of the prior CBA, the NHL implemented a

---

[3] These facts are as alleged in the Complaint.

"lockout" of the players.  Id.  Under this "lockout," the NHL teams collectively refused to pay

players salary owed under their contracts and refused to allow players the ability to work.  Id.

As of the date of the Complaint, and as during prior "lockouts," the NHLPA has

remained the collective bargaining representative of the players during the current "lockout" and

has continued to negotiate with the NHL in an effort to reach agreement on a new CBA.  Id. at ¶¶

40-41.  The Complaint alleges that, having failed to reach agreement on a new CBA, the NHLPA

recently initiated a vote of the players to determine whether the players want to authorize the

NHLPA to disclaim its role in collective bargaining.  See id. at ¶ 42.  The Complaint makes no

allegations concerning the outcome of this vote or whether the NHLPA has already decided to

exercise any such authority to disclaim should it be provided.  Nor does the Complaint identify

any specific player who intends to file an antitrust suit against the NHL should authority to

disclaim be approved by the players and acted upon by the NHLPA.  In fact, the Complaint

recognizes that these events may never come to pass by arguing that the Court should intervene

"[e]ven in the event that the NHL players elect not to decertify or disclaim and subsequently file

an antitrust lawsuit."  Id. at ¶ 58.

## ARGUMENT

### I.      The NHL's Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction

The Declaratory Judgment Act allows federal courts to "declare the rights and other legal

relations" of parties to an "*actual controversy* within its jurisdiction[.]"  28 U.S.C. § 2201

(emphasis added).  "The Declaratory Judgment Act . . . , in its limitation to 'cases of actual

controversy,' manifestly has regard to the constitutional provision [Art. III, § 2] and is operative

only in respect to controversies which are such in the constitutional sense."  Textron Lycoming

Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric Implement

Workers of Am., 523 U.S. 653, 661 (1998) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S.

227, 239-240 (1937)).  "As numerous courts have observed, 'the Declaratory Judgment Act is not itself an independent basis for subject matter jurisdiction.'"  Tunne v. Duane Reade, Inc., No. 09 Civ. 10187 (BSJ), 2011 U.S. Dist. LEXIS 27305, at *16 (S.D.N.Y. March 12, 2011) (internal citations omitted).

The NHL, as the plaintiffs here, bears the burden of establishing that an "actual controversy" sufficient to confer subject matter jurisdiction exists – lest the Court be in a position of issuing an advisory opinion on a hypothetical set of facts.  See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001) (citing Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993)); Tunne, 2011 U.S. Dist. LEXIS 27305, at *16 ("The party seeking declaratory relief bears the burden of showing jurisdiction.").  In order to meet this burden, the NHL must demonstrate that there was a ripe, justiciable controversy *at the time the complaint was filed*.  See Textron, 523 U.S. 653, 660 (1998); Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009); Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995); N. Am. Airlines Inc. v. Int'l Bhd. of Teamsters, No. 04 Civ. 9949(KMK), 2005 WL 646350, at *8 (S.D.N.Y. Mar. 21, 2005).  The Complaint, here, fails to carry this burden and must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

A.    The Complaint's Allegations of a Hypothetical Disclaimer and Lawsuit Are Insufficient to Establish an "Actual Controversy"

Viewed, as it must be, at the time of filing, the NHL's Complaint seeks various declarations concerning the legal rights of the NHL and hockey players (i) *if* a majority of the players vote to authorize the NHLPA to disclaim its role as the collective bargaining representative of the players, (ii) *if* the NHLPA decides to exercise such authority, (iii) *if* some set of individual players thereafter decides to sue the NHL under the antitrust laws, and (iv) *if*

US_ACTIVE:\44161249\9\64938.0014

these unidentified players include within this hypothetical antitrust suit a request for injunctive relief against the NHL's "lockout." See Compl. ¶¶ 8-14. Yet, the Complaint does not, and cannot, allege that any of those things had actually taken place at the time of filing.

Indeed, the Complaint only goes so far as to allege that the NHLPA had commenced a vote of NHL players concerning whether or not to authorize a disclaimer of interest. See id. at ¶¶ 4, 42. There are no allegations concerning the outcome of any such vote. Moreover, the vote would only authorize disclaimer. See id. Whether that authority, if granted, would ever be exercised is simply another contingency that demonstrates that there was no "actual controversy" between the parties when the NHL brought this suit.

Applying the Declaratory Judgment Act in this matter, which requires multiple assumptions regarding the outcome of contingent events at time of the Complaint, is contrary to the Supreme Court's "decisions [requiring] that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a *hypothetical state of facts*.'" MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007) (emphasis added; internal citations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). Moreover, the Supreme Court has found that "the declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen" and a federal court "cannot, consistent with Article III, provide" a plaintiff "with an opinion advising what the

9

law would be upon a hypothetical state of facts."  MedImmune, 549 U.S. at 139, 143 (alteration in original; internal citations omitted).

Accordingly, dismissal for lack of subject matter jurisdiction is warranted where the challenged events – here, an assumption about the outcome of a vote to authorize the NHLPA to disclaim, the hypothetical exercise of that authority resulting in an actual disclaimer by the NHLPA, an assumed antitrust suit that would follow disclaimer, and the possibility that an injunction will be sought in a potential future antitrust suit – were entirely speculative as of the time the Complaint was filed.  See United States v. Santana, 761 F. Supp. 2d 131, 138 (S.D.N.Y. 2011).  As this Court has recognized, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Katzman v. Helen of Troy Texas Corp., No. 12 Civ. 4220 (PAE), 2012 WL 3831745, at *3 (S.D.N.Y. August 28, 2012) (quoting Texas v. United States, 523 U.S. 296, 300 (1998) and dismissing a declaratory judgment counterclaim because the predicate factual matters are "today unknown" and would require "conjecture").  The NHL simply cannot meet its burden of establishing an "actual controversy," at the time the Complaint was filed, ripe for adjudication in this case.  See NHL, 789 F. Supp. at 295.

B.     Alleged "Threats" Made During Collective Bargaining Are Insufficient to Establish an "Actual Controversy" as a Matter of Law

Unable to assert any actual facts demonstrating a ripe, judiciable controversy, the NHL resorts to claiming that mere "threats" of litigation require judicial intervention.  Indeed, the very first sentence of the introduction to the NHL's Complaint makes clear that the purported basis for this action is alleged threats of antitrust litigation.  See Compl. ¶ 1 ("This action arises from the Union's threatened use of antitrust litigation . . . .").  Lest there be any confusion, the NHL reiterates this basis repeatedly throughout its complaint. See e.g. id. at ¶¶ 15, 45, 55, 56.  Federal

10

courts, however, have consistently held that threats of litigation made in the context of collective bargaining negotiations are facially insufficient to establish a justiciable controversy. See <u>N. Am. Airlines Inc.</u>, 2005 WL 646350, at *13-14; <u>see also</u> <u>Atlas Air, Inc.</u> v. <u>Air Line Pilots Ass'n</u>, 232 F.3d 218, 227 (D.C. Cir. 2000); <u>Fed. Express Corp.</u> v. <u>Air Line Pilots Ass'n</u>, 67 F.3d 961, 964-65 (D.C. Cir. 1995); <u>NHL</u>, 789 F. Supp. at 295.

In <u>North American Airlines Inc.</u>, this District held that an employer's allegations of threatened legal action "must be viewed in the context of collective bargaining, which is a robust and dynamic negotiation process where leverage is sought through posturing." 2005 WL 646350 at *13-14. The court went on to explain:

> "[A]ny time parties are in negotiation . . . , the possibility of lawsuit looms in the background." This holds as true in collective bargaining as in any negotiation. Indeed, it is precisely in the circumstance of heated collective bargaining that the courts discount threats to take "all appropriate action" as typical posturing and not the type of threat that creates an Article III case or controversy, even in a declaratory judgment action.

<u>Id.</u> (internal citations omitted). The D.C. Circuit has expressed the same view in two separate cases. <u>See Atlas Air, Inc.</u>, 232 F.3d at 227 (affirming dismissal of a declaratory judgment action and holding "[t]hat a union may posture in labor negotiations or otherwise threaten to respond to future changes is insufficient" to establish ripeness); <u>Fed. Express Corp.</u>, 67 F.3d at 964-65 (affirming dismissal of a declaratory judgment claim because "[e]mployers and unions can be expected to take aggressive bargaining positions and freely threaten dire consequences when they are rejected.").

This holding is in accord with the District of Minnesota's decision discussed above in <u>NHL</u> v. <u>NHLPA</u>. There, the fact that the NHL alleged that the players had threatened to resort to antitrust litigation if the NHL unilaterally imposed restrictions on players that were not agreed to in collective bargaining was simply insufficient to confer subject matter jurisdiction for a

11

declaratory judgment action.  NHL, 789 F. Supp. at 295.  And, the allegations here present an even more speculative "threat" of antitrust litigation.  In this case, the NHL alleges that this hypothetical antitrust suit will only take place after disclaimer (see Compl. ¶ 42), which is an additional contingency that was not present in the prior case.  Nor does the instant Complaint allege that the players will file suit upon some concrete triggering event, like the NHL's unilateral implementation of player restrictions in the District of Minnesota case.  Here, the event this hypothetical antitrust lawsuit would challenge is the "lockout," which has been ongoing for months without the union disclaiming or the players bringing lawsuits.

Moreover, the NHL's allegations of "threats" are nothing more than conclusory statements unsupported by any specific allegations.  See id. at ¶¶ 1, 4, 15, 45.  Indeed, the only statement attributed to a union executive or staff member is a purported statement by NHLPA Executive Director Don Fehr that "[y]ou can look at what's happened in other sports and make your own judgment about [possible NHLPA decertification]."  Id. at ¶ 43 (second alteration in original).  Moreover, the Complaint contains absolutely no alleged statements from 33 of the 36 named individual defendants.  And, the specific alleged statements the Complaint does contain are innocuous at best, acknowledging that disclaimer is "an option," "has been discussed," and "is something [NHL players are] definitely looking at."  Id. (alteration in original).  These statements hardly make up a threat to disclaim and file antitrust lawsuits.[4]  If anything, they indicate that no decision had yet been reached and the players were simply evaluating their options.

_____

[4] In fact, just earlier today, the Commissioner of the NHL, Gary Betteman, stated that "[t]he word 'disclaimer' has never been, has yet to be, uttered to us by the players' association[.]"  Katie Strang, Sources:  PA doesn't file disclaimer, ESPN.com, Jan. 3, 2012, http://espn.go.com/nhl/story/_/id/8806808/nhlpa-lets-deadline-pass-filing-disclaimer-interest.

12

Additionally, the NHL attempts to bolster their case by citing to their own bargaining history with the NHLPA. See id. at ¶¶ 32-37. This, however, does not advance their position. The Complaint acknowledges that the NHL and the NHLPA have had a continuous bargaining relationship for over 40 years. Id. at ¶ 3. In fact, in 1994-1995, the NHL implemented a "lockout" that lasted 102 days, and in 2004-2005 the NHL "locked out" the players *for an entire season*. Id. at ¶ 34. There is no allegation in the Complaint that the NHL players ever disclaimed and brought an antitrust suit during any of those "lockouts." The bargaining history between the parties only demonstrates that disclaimer cannot be presumed.[5]

The NHL has simply failed to meet its burden of establishing an "actual controversy" at the time of filing sufficient to confer subject matter jurisdiction for the Court to adjudicate this purported dispute.

C.      The NHLPA Has No Standing to Bring a Coercive Antitrust Suit and Thus The Court Does Not Have Subject Matter Jurisdiction Over the NHLPA

Regardless of whether litigation threats are sufficient to confer subject matter jurisdiction over the individual defendants, there is no jurisdiction as to the NHLPA because the NHLPA, whether as a union or a post-disclaimer trade association, has no standing to bring a coercive antitrust suit. The NHLPA does not participate in any market for player services, and therefore lacks antitrust standing to sue on its own behalf for either damages or injunctive relief. See

---

[5] The NHL's citation to recent disclaimers by players' unions in other sports also fails to support their position. See Compl. ¶¶ 46-52. Indeed, the court adjudicating the antitrust lawsuit between the NFL and certain of its players found that the players were likely to succeed on the merits of their claims that the non-statutory labor exemption ended upon disclaimer and that the NFL's "lockout" violated antitrust law. See Brady v. NFL, 779 F. Supp. 2d 992, 1040 (D. Minn. 2011), rev'd on other grounds 646 F.3d 661 (8th Cir. 2011); see also Powell v. NFL & McNeil v. NFL, 764 F. Supp. 1351, 1358 (D. Minn. 1991) (finding that the exemption ended at disclaimer). This is a far cry from the NHL's description of disclaimer as "an impermissible bargaining tactic Defendants mistakenly believe would enable them to commence an antitrust lawsuit challenging the legality of the NHL's ongoing lockout[.]" Compl. ¶ 1.

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 537-44 (1983) (finding that a plaintiff must be a participant in the relevant market to have standing to seek antitrust damages); Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 122-23 (1986) (same regarding antitrust injunctive relief).  As the District of Minnesota found in 1992, "the NHLPA lacks standing to bring a coercive antitrust action, and, therefore, [the court] lacks subject matter jurisdiction to entertain a declaratory judgment action against the NHLPA." NHL, 789 F. Supp. at 293.

## II.   Even if Subject Matter Jurisdiction Exists, the Court Should Decline to Exercise its Discretion to Hear this Case

Even if the NHL has successfully alleged an "actual controversy" at the time of the Complaint sufficient to confer subject matter jurisdiction (which they have not), the Court should exercise its broad discretion to decline to adjudicate this case for prudential reasons.  "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so.  This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  MedImmune Inc., 549 U.S. at 136 (emphasis in original; internal citations omitted).  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Int'l Sec. Exch., LLC v. Dow Jones & Co., No. 07-3324-cv, 2009 U.S. App. LEXIS 230, at *3 (2d Cir. Jan. 8, 2009).

This prudential rule serves to eliminate forum shopping by would-be defendants.  "Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff."  Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc., No. 02 Civ. 10338 (SAS), 2003 U.S. Dist. LEXIS 9193, at *18-19

(S.D.N.Y. June 2, 2003) (collecting cases).  "The federal declaratory judgment is not a prize to the winner of a race to the courthouses." Id. (quoting Perez v. Ledesma, 401 U.S. 82, 119 n.12 (1971) (Brennan, J. dissenting)).  "In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 586 (S.D.N.Y. 1990).

Here, the NHL's Complaint makes clear that it brought this suit not because it was prejudiced by any delay on the part of the players or uncertainty engendered by such delay, but solely in anticipation of what it has alleged is an imminent threat of disclaimer and antitrust litigation by the players.  See Compl. ¶¶ 7, 45.  In fact, if the NHL's allegations turn out to be true and the NHLPA disclaims followed by players bringing antitrust suits, the NHL would have the opportunity to litigate all of the purported legal issues it raises here in short order.  And, courts should exercise their discretion to dismiss declaratory judgment actions "particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties." CGI Solutions, LLC v. Sailtime Licensing Group, LLC, No. 05 Civ. 4120 (DAB), 2005 U.S. Dist. LEXIS 28878, at *23 (S.D.N.Y. Nov. 17, 2005) (quoting Great American Ins. Co. v. Houston Gen., 735 F. Supp. 581, 584 (S.D.N.Y. 1990)) (dismissing an earlier filed declaratory judgment action because "[d]eclaratory judgment actions are not meant to permit parties who fear the looming incubus of litigation to dodge a particular forum"); see also Great Am. Ins. Co. v. A.G. Ship Maint. Corp., 368 F. Supp. 2d 364, 365-66 (S.D.N.Y. 2005) ("No useful purpose would be served by this Court proceeding to declare the rights of the parties when the New Jersey court necessarily will do precisely the same thing in determining whether to grant or deny coercive relief."); accord Lewis v. NFL, 813 F. Supp. 1, 3-7 (D.D.C.

15

1992) (denying NFL's motion to dismiss, stay or transfer an antitrust action brought by football players where the NFL had previously filed an anticipatory declaratory judgment action in a different court raising the same issues). Thus, even if the players disclaim the status of the NHLPA and some players bring antitrust suits, this declaratory suit should still be dismissed.

## <u>CONCLUSION</u>

As discussed herein, the NHL filed this suit prior to any disclaimer taking place or any lawsuit being filed. Thus, at the time the Complaint was filed there simply was not subject matter jurisdiction in this matter. In addition, the NHL is using this suit in an attempt to force the players to remain in a union. Not only is it virtually unheard of for an employer to insist on the unionization of its employees, it is also directly contradicted by the rights guaranteed to employees under Section 7 of the National Labor Relations Act. The NHL's gun-jumping suit is simply an attempt to have these issues decided in the forum of its choosing, which is an improper use of the declaratory judgment mechanism. For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated:   New York, New York
       January 3, 2013

                        Respectfully submitted,

                        By:   <u>/s/ James W. Quinn</u>
                           James W. Quinn
                           Bruce S. Meyer
                           John R. Gerba
                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Tel:    (212) 310-8000
                           Fax:    (212) 310-8007
                           bruce.meyer@weil.com

                         And

16

Steven A. Fehr
204 W. Linwood Blvd.
Kansas City, MO 64111
Tel:      (816) 561-3755
Fax:      (816) 561-9355
Fehr@swbell.net

*Attorneys for Defendants*

US_ACTIVE:\44161249\9\64938.0014